# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| L.G. Brown, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 11-0277 (BAH)** |
| | ) | |
| M. Wilhelm *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The Plaintiff, proceeding *pro se*, is a District of Columbia resident suing former District of Columbia Mayor Adrian Fenty and two officers of the District of Columbia Protective Services, Officer Michael Wilhelm and Commander Louis Cannon, under 42 U.S.C. § 1983.   On October 19, 2011, the Court dismissed the complaint against Fenty and Cannon.   Order, ECF No. 13; *see Brown v. Wilhelm*, 819 F. Supp. 2d 41 (D.D.C. 2011).   Pending before the Court is Wilhelm's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   Mot. to Dismiss for Failure to Prosecute or in the Alternative for Summ. J., ECF No. 24; *see* Min. Order (Sept. 21, 2012) (denying the Defendant's motion to dismiss for failure to prosecute).   Upon consideration of the parties' submissions, including the Plaintiff's opposition to the instant motion, ECF No. 29, and surreply, ECF No. 31, and the entire record, the Court will grant Wilhelm's motion and enter judgment in his favor.

## I.  BACKGROUND

This action arises from a physical encounter on November 28, 2010, between the Plaintiff

and Wilhelm.   The Plaintiff alleges that on November 28, 2010, Wilhelm approached her at the corner of Seventh and A streets in the southeast quadrant of the District, "assumed that [she] was committing a crime[,] grabbed her arms in an attempt to break them . . ." and threw her to the ground.   Compl. at 1.   The Plaintiff further alleges that Wilhelm did not identify himself "as any type of officer" until she called for help.   *Id*. at 2.   Wilhelm then allegedly "proceeded to say 'Stop resisting' as he attacked the Plaintiff under the guise of 'protecting and serving' the community."   *Id*.   The Plaintiff claims that her "young child was forced to witness this horrific scene."   *Id*.

The Plaintiff filed this civil action on January 31, 2011, claiming that the Defendants violated her right under the Fourth Amendment to the U.S. Constitution to be free from unreasonable search and seizure and 18 U.S.C. § 242.   *Id*. at 2; *see Brown*, 819 F. Supp. 2d at 43 n.2 (finding jurisdiction wanting over statutory claim because the criminal statute invoked "does not authorize a private cause of action").   The Plaintiff demands an apology and $10 million for "pain and suffering" and $1 million "in punitive damages."   Compl. at 3.

## II.  LEGAL STANDARD

Pursuant to Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).   To determine which facts are material, the Court looks to the substantive law on which each claim rests.   *Anderson*, 477 U.S. at 248.   The mere existence of a factual dispute does not bar summary judgment.   *See id*.   A genuine dispute is one whose resolution

could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 477 U.S. at 248.   Summary judgment is properly granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp.*, 477 U.S. at 322.   The burden remains on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" by, for example, pointing to the absence of evidence proffered by the nonmoving party.   *Id.* at 322-23.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party, and shall accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255; *Estate of Parsons*, 651 F.3d at 123; *Tao*, 27 F.3d at 638.   The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record."   Fed. R. Civ. P. 56(c)(3).   For a factual dispute to be "genuine," *Estate of Parsons*, 651 F.3d at 123, the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of her position, *Anderson*, 477 U.S. at 252, and she cannot simply rely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).   Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in her favor.   *See Anderson*, 477 U.S. at 250.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."   *Id.* at 249-50 (citations omitted).

## III.   DISCUSSION

Wilhelm contends that summary judgment on the Plaintiff's Fourth Amendment claim is warranted because (1) he had probable cause to arrest the Plaintiff, (2) he did not use excessive

force, (3) the seizure was reasonable under the circumstances, and (4) he is entitled to qualified immunity.   Def.'s Summ. J. Mot. at 1-2.   In addition, Wilhelm asserts that the Plaintiff has failed to state common law claims of assault and battery and intentional infliction of emotional distress, but the Plaintiff neither presented such claims in her complaint nor renewed her motion for leave to file an amended complaint after the Court's denial of her first motion without prejudice.   *See* Aug. 10, 2011 Dkt. Entry.   Hence, the Court does not find any common law claims to be a part of this action, but it would in any event decline to exercise jurisdiction over the common law claims absent survival of the federal claim.   28 U.S.C. § 1367(c)(3) ("The district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction[.]").

Turning to the claim properly before the Court, the Fourth Amendment prohibits law enforcement officers from conducting "unreasonable searches and seizures," and "this protection extends to a brief investigatory stop of persons . . .   whether or not an arrest follows."   *U.S. v. Williams*, 878 F. Supp. 2d 190, 196 (D.D.C. 2012) (quoting *United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010)) (other citations and internal quotation marks omitted).   "Generally, 'searches must be supported by a warrant obtainable upon a showing of probable cause.' " *id*. at 196-97 (quoting *United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005), but there are "a few specifically established and well-delineated exceptions" to the warrant requirement, such as when there is a "reasonable, articulable suspicion that 'criminal activity may be afoot.' " *Williams*, 878 F. Supp. 2d at 197 (quoting *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (quoting *Terry v. Ohio*, 392 U.S. at 1, 30 (1968)).   A so-called *Terry* stop requires only a "minimal level of objective justification."   *Id*. (citation and internal quotation marks omitted).

4

Claims based on a police officer's use of "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [one's] person" are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]" *id.* at 396, considering such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations omitted). Excessive force may be found "if 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' is weightier than 'the countervailing governmental interests at stake.' " *Rudder v. Williams*, 666 F.3d 790, 795 (D.C. Cir. 2012) (quoting *Graham*, 490 U.S. at 396). The Fourth Amendment is not violated, however, by "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers." *Graham*, 490 U.S. at 396 (citation and internal quotation marks omitted).

Here, the undisputed facts are that the Plaintiff and her young daughter saw a dollhouse while shopping at Eastern Market and carried it away. Pl.'s Opp'n, Aff. of Facts, ECF No. 29 at p. 8. Wilhelm stopped them, and a physical altercation ensued.

According to the police report prepared by Wilhelm on the date of the event, a vendor had informed him that "a piece of her artwork had been stolen from her within the last 5 minutes, while she was offloading merchandise from her van." Def.'s Ex. A (MPD Incident-Based Event Report, ECF No. 24-1 at p. 8). The vendor described the piece "as a large doll house which was painted in glossy orange paint." *Id.* Wilhelm "canvassed the area and observed" the Plaintiff "and a female juvenile crossing the street at 8th and C Street SE, carrying a piece of artwork which matched [the

vendor's] description."   *Id*.   When the Plaintiff refused Wilhelm's order for her to stop and show

identification and proceeded to walk away, Wilhelm "grabbed" the Plaintiff's arm "and advised

her to place the artwork on the ground, at which time she complied."   *Id*.   The Plaintiff then

began yelling for someone to call the police.   *Id*.   Wilhelm told the Plaintiff that he was the police

and that he had stopped her "in reference to a Theft which had just occurred.   While holding [the

Plaintiff's] right arm," Wilhelm told the Plaintiff that he "would be placing her in handcuffs and

that [he] needed her to place her other hand behind her back."   *Id*.   Following "a brief struggle,"

the Plaintiff was handcuffed.   After the vendor "arrived on the scene and positively identified the

artwork as her property," the Plaintiff was arrested and charged with theft.   *Id*.

     The Plaintiff does not dispute the authenticity of the police report, which establishes that

Wilhelm had probable cause to stop and subsequently arrest her for theft.[1]   Furthermore, the

Plaintiff admits in the complaint that Wilhelm told her to "Stop resisting," Compl. at 2, which

supports Wilhelm's account that some level of force was needed to handcuff the Plaintiff.[2]

Neither the fact that the dollhouse may have been "left unattended at a trash can" nor the fact that

the theft charge "was later dismissed," Pl.'s Mem. of P. & A. at 1, is significantly probative of

Wilhelm's conduct.

---

[1]   The police report prepared contemporaneously with the event constitutes a record of "regularly
conducted activity," Fed. R. Evid. 803(6), which the Court may rely upon in ruling on the
summary judgment motion.

[2]   In her surreply filed on January 4, 2013, the Plaintiff states that "[h]ospital records exist
regarding this assault as well as two eyewitness accounts [that] will be presented to the court at the
appropriate time."   Pl.'s Acknowledges and Responds to Def.'s Counsel's Statements Regarding
Pl.'s Initial Response Against the Mot. for Summ. J., ECF No. 31, at 2.   The Plaintiff was advised
on August 22, 2012, that in responding to the summary judgment motion, she needed to support
her facts with evidence and that simple allegations at this stage of the proceedings would not
suffice to defeat summary judgment.   *See* Order, ECF No. 25, at 2-4.   In other words, the
Plaintiff was properly advised that "the appropriate time" to present evidence is now.

The Court finds that no reasonable jury presented with the foregoing material facts could find that Wilhelm acted without probable cause or used excessive force to effect the Plaintiff's arrest.   *See Graham*, 490 U.S. at 396 (in determining reasonableness, consideration is given to whether the individual was "actively resisting arrest or attempting to evade arrest by flight"); *see also Rudder*, 666 F.3d at 795 ("Unlike, say, pushing an arrestee against a wall and pulling his arm behind his back, beating a suspect to the ground with a baton exceeds in violence anything we would expect in the course of a routine arrest . . . .")   Hence, Wilhelm is entitled to summary judgment on the Fourth Amendment claim.   The Court therefore will not address Wilhelm's equally plausible argument that he is entitled to qualified immunity, Def.'s Mem. of P. & A. at 10-12, except to conclude that he is correct.   *See Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012) ("Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.") (citation, internal quotation marks and alteration omitted).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that no material facts are in genuine dispute as to the reasonableness of Wilhelm's conduct and that Wilhelm is entitled to judgment as a matter of law.   Accordingly, his motion for summary judgment will be granted.   A final Order accompanies this Memorandum Opinion.

/s/ *Beryl A. Howell*

United States District Judge

DATE:   February 15, 2013